The Full Commission has reviewed the prior Opinion and Award based on the record of the proceedings before Deputy Commissioner Lorrie L. Dollar and the briefs and arguments on appeal. No additional witness testimony was received by the Full Commission. Although the Full Commission acknowledges the general proposition that hearing officers are in a better position to judge the credibility of witnesses based on their first hand observances, it nonetheless finds that the appealing party has shown good ground to reconsider the evidence. Having reconsidered the entire evidence of record, including the Deputy Commissioner's first hand observations of the witnesses, the Full Commission reverses the prior Opinion and Award and enters the following Opinion and Award.
 *************
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing on 14 October 1997 as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. Employers Insurance of Wausau was the carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. Plaintiff sustained an injury by accident arising out of and in the course of his employment on 19 June 1996.
5. Plaintiff's average weekly wage was $847.50, which yields a maximum compensation rate for 1996 of $492.00 per week.
6. The issue for determination is to what benefits may plaintiff be entitled as a result of the injury by accident which he sustained on 19 June 1997.
7. The parties stipulated the following exhibits into the record:
 a. Exhibit 1 — Benefits Paid to Plaintiff under Employer-Funded Sickness/Accident Plan, one page;
b. Exhibit 2 — Form 22 Wage Chart, two pages;
c. Exhibit 3 — Medical Records, seventy-seven pages;
 d. Exhibit 4 — Forms 18, 28, and 33, Defendant's Accident Reports of 3 January 1996 and 19 June 1996, five pages;
e. Exhibit 5 — Employee/ Work Status Forms, seventeen pages;
 f. Exhibit 6 — Defendant's Health/Nurse Records for Plaintiff, twenty-three pages;
 g. Exhibit 7 — 6 October 1997 letter of Dr. Thomas Melin, one page;
h. Exhibit 8 — Records of Dr. Mark Rodger, two pages; and
 i. Defendant's Exhibit 1 — four photographs of the ladder and work area.
8. Plaintiff was out of work from 26 June 1996 through 7 July 1996, 19 September 1996 through 22 December 1996, and 11 March 1997 through the date of the present and continuing.
 *************
Based upon the entire evidence of record, including the Deputy Commissioner's first hand observations of the witnesses, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the admittedly compensable injury, plaintiff was a thirty year old high school graduate, who was employed as a pipefitter. Plaintiff's duties included repairing, maintaining, and fabricating pipe in the digester area of defendant-employer's pulp paper mill. Plaintiff utilized chain falls, hoists, and come-alongs to assist with the lifting and moving of the pipe on which he would work, and he used wrenches, sledge hammers, and measuring tools to perform the work. He was also required to climb ladders and to perform work in confined areas to repair or replace pipe. Plaintiff worked in flexicraft, which meant that he was cross-trained to assist with welding and millwright jobs in his work area.
2. On 19 June 1996, plaintiff and coworker Rodney Floyd were changing out the turpentine condenser. As plaintiff removed the bolts from the pipe, steam began to escape from the open end. In order to avoid the escaping steam, plaintiff jumped backwards from the third step of the ladder and when he landed on the floor, he felt pain in his low back.
3. Plaintiff reported the incident to his supervisor, and requested to go to first aid, where ice packs were applied to his back. An accident report was also completed at that time.
4. On the morning of 20 June 1996, plaintiff felt increased pain in his back and he called the first aid office, where he was referred to Dr. John Cromer. During his examination of plaintiff, Dr. Cromer found that he was experiencing pain in his mid-thorasic and lower lumbar regions of his back, in his right leg and in the posterior region of his neck. Dr. Cromer diagnosed plaintiff with an acute lumbar strain. Plaintiff was prescribed medications and advised that he could return to work, but that he should use caution with any heavy lifting, pushing or pulling.
5. Following this initial examination, plaintiff was unsatisfied with the diagnosis and recommendations provided by Dr. Cromer. On his own, plaintiff presented to Coastal Orthopaedics on 20 June 1996 where he had previously been treated by Dr. John S. O'Mally. On that date he was examined by Dr. R. Mark Rodger who restricted plaintiff from lifting more than fifteen pounds (15), found that he should avoid repetitive bending or stooping and prohibited him from climbing ladders and performing heavy pushing or pulling.
6. Plaintiff was examined by Dr. Rodger and Dr. O'Mally on other occasions during this period. At the time plaintiff first presented to Coastal Orthopaedics, he was entitled to a second opinion from a doctor of his own choosing. Furthermore, the care and treatment provided by Dr. Rodger and Dr. O'Mally was reasonably necessary to effect a cure and provide relief to plaintiff as the result of his 19 June 1996 injury by accident.
7. On 21 June 1996, Dr. Cromer prescribed additional medication and revised plaintiff's work restrictions which were to apply through 26 June 1996. Based upon Dr. Cromer's restrictions, plaintiff was limited to lifting a maximum weight of fifteen pounds (15), was to avoid repetitive bending or stooping and was prohibited from climbing ladders and performing heavy pushing or pulling. These revised restrictions by Dr. Cromer mirror those recommended the previous day by Dr. Rodger.
8. On 26 June 1996, plaintiff was again examined by Dr. Cromer. During this examination, plaintiff reported that he had experienced difficulty after returning to work. Plaintiff explained that his back would grow more stiff and painful throughout the work day from the sitting and occasional standing required. Sometime prior to this examination, plaintiff had also been seen by Dr. O'Mally, who spoke with Dr. Cromer regarding plaintiff's condition. Following his examination, Dr. Cromer concurred with the opinion of Dr. O'Mally that plaintiff should be removed from work for the remainder of the week. Plaintiff was also referred to physical therapy.
9. On 1 July 1996, Dr. Cromer released plaintiff to return to light duty work. Plaintiff's restrictions on that date were no lifting from the waist of more than twenty (20) pounds, no repetitive bending or stooping, no prolonged standing or walking and no heavy pushing or pulling.
10. Thereafter, plaintiff continued to work in a light duty position while continuing to experience pain through 20 September 1996. From 20 September 1996 through 22 December 1996, plaintiff was unable to work because of the pain he was experiencing. Throughout this period, plaintiff continued to receive medication as prescribed by Dr. Cromer while following Dr. Cromer's treatment plan.
11. On 3 January 1997, Dr. Cromer found that plaintiff could return to work with no restrictions. However, following an examination on 15 January 1997, Dr. Cromer reinstated lifting and other physical restrictions and referred plaintiff for an additional evaluation. Based upon these different findings which were made within a short period of time, there is insufficient evidence to support a finding that plaintiff reached maximum medical improvement on 3 January 1997.
12. On 27 January 1997, plaintiff was examined by Dr. Thomas Melin of Coastal Neurosurgical Associates. Plaintiff had been referred to Dr. Melin by Dr. Cromer because of his continued complaints of pain following his return to light duty work. Following his examination, Dr. Melin diagnosed plaintiff with chronic myofacial pain syndrome. Dr. Melin recommended additional physical therapy and work hardening to be followed by a functional capacity evaluation.
13. A functional capacity evaluation of plaintiff was performed on 12 February and 13 February 1997. Based on this evaluation, plaintiff was given a forty-five pounds (45) lifting restriction and was to continue to avoid heavy pushing or pulling and prolonged bending or stooping. Thereafter, plaintiff continued to work in a light duty position while continuing to experience pain through 10 March 1997.
14. Through 10 March 1997, plaintiff received benefits under an employer-funded sickness and accident plan for the periods he was out of work.
15. Defendant-employer has a light duty policy whereby physical restrictions are accommodated, regardless of whether they are due to work-related or non-work-related conditions.
16. Pursuant to this light duty policy, Mr. Joe Buchanan, plaintiff's supervisor, had assigned plaintiff to various jobs in the shop area which were suitable to his restrictions, and which were regular job functions with the defendant-employer.
17. During the period immediately preceding 10 March 1997, plaintiff had continued to report to Mr. Buchanan that he was experiencing pain while performing and as the result of his work. Mr. Buchanan became frustrated with plaintiff's complaints and brought his frustrations to the attention of Mr. Donald Pope, defendant-employer's maintenance manager. Mr. Pope then brought this issue to the attention of Mr. Andy Anderson, defendant-employer's human resources director.
18. During a meeting on 10 March 1997, Mr. Pope and Mr. Anderson discussed plaintiff's restrictions, his complaints of pain and the availability of suitable work. At this meeting, Mr. Pope and Mr. Anderson expressed the opinion that defendant-employer had no other available jobs which could be provided to plaintiff. Based on this belief, Mr. Anderson determined that plaintiff be should instructed to go home.
19. The determination on 10 March 1997 that plaintiff should cease working and go home was made by his supervisors and was not an independent decision made by plaintiff. Furthermore, at that time, plaintiff expressed the desire to continue working if a suitable position could be provided. Therefore, plaintiff actions did not amount to a constructive refusal of suitable employment.
20. In the prior Opinion and Award, the Deputy Commissioner found that plaintiff's testimony that he continued to experience pain while working in light duty positions provided by defendant-employer was not credible. However, based upon the circumstances surrounding plaintiff's leaving work on 10 March 1997 and his consistent expression of the desire to continue working, the Full Commission finds that plaintiff's testimony on this issue was credible.
21. Following his dismissal from work on 10 March 1997, plaintiff did not seek additional medical treatment until he reported to Dr. Melin in early October 1997. While it may have been more prudent for plaintiff to have sought additional treatment during this period, he was under no duty to do so, and the fact that he did not does not detract from his overall credibility. Furthermore, there is no evidence that defendants made any effort to refer plaintiff for additional medical treatments or evaluations during this period, although it would have been prudent to have done so.
22. On 6 October 1997, Dr. Melin wrote a letter in which he noted that due to plaintiff's severe ongoing complaints of pain, he found plaintiff to have myofacial pain syndrome which was aggravated, if not caused by the fall in June of 1996.
23. On 9 October 1997, plaintiff returned to Dr. Cromer for an updated reassessment of his medical status in anticipation of his hearing. Plaintiff related a history of sleep disturbance and localized pain after activity. After a physical examination, Dr. Cromer diagnosed plaintiff as having chronic myofacial low back pain.
24. Plaintiff's myofacial pain syndrome was caused or significantly aggravated by his injury by accident on 19 June 1996.
25. As the result of his 19 June 1996 injury by accident, plaintiff was unable to earn wages in his former position with defendant-employer or in any other position for the following periods: from 26 June 1996 through 7 July 1996; from 19 September 1996 through 22 December 1996; and from 11 March 1997 through the present and continuing.
 *************
Based upon the foregoing findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On 19 June 1996, plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer. G.S. § 97-2(6).
2. As the result of his 19 June 1996 injury by accident, plaintiff is entitled to be paid by defendants temporary total disability compensation at the rate of $492.00 per week from 26 June 1996 through 7 July 1996 and 19 September 1996 through 22 December 1996. G.S. § 97-29. Defendants are entitled to a credit for benefits paid to plaintiff pursuant to the company sickness and accident plan. G.S. § 97-42.
3. On or about 10 March 1997, plaintiff did not unjustifiably refuse suitable employment, either constructively or otherwise. G.S. § 97-32.
4. As the result of his 19 June 1996 injury by accident, plaintiff is entitled to be paid by defendants temporary total disability compensation at the rate of $492.00 per week for the period of 11 March 1997 through the present and continuing until such time as plaintiff returns to work or until further order of the Commission.
5. As the result of his 19 June 1996 injury by accident, plaintiff is entitled to have defendants pay for all medical expenses incurred or to be incurred, including expenses related to the treatment provided by Dr. O'Mally and Dr. Rodger. G.S. § 97-25; G.S. § 97-25.1.
 *************
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation to plaintiff at the rate of $492.00 per week for the following periods: from 26 June 1996 through 7 July 1996; from 19 September 1996 through 22 December 1996; and from 11 March 1997 through the present and continuing until such time as plaintiff returns to work or until further order of the Commission. This compensation is subject to a credit in defendants favor for benefits paid to plaintiff through the employer-funded sickness and accident plan. From the amount of compensation which has accrued, this shall be paid to plaintiff in a lump sum.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as the result of his 19 June 1996 injury by accident, including expenses related to the treatment provided by Dr. O'Mally and Dr. Rodger.
3. Defendants shall pay the costs.
 S/ ________________________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING:
S/ ______________________ LAURA K. MAVRETIC COMMISSIONER
S/ ______________________ DIANNE C. SELLERS COMMISSIONER